UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EMERGENT BIOSOLUTIONS INC.,        :
      Plaintiff,        :
                :
v.        :        CIVIL ACTION NO.
                :        3:08-cv-01529 (VLB)
DANIEL ADAMS ET AL.,        :
      Defendants.        :        August 24, 2009


MEMORANDUM OF DECISION DENYING IN PART AND
GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND
DENYING DEFENDANTS' MOTION TO STAY [Doc. #14]


      The defendants, Daniel Adams and Manon Cox, move pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the two-count complaint filed by the plaintiff, Emergent Biosolutions Inc. ("Emergent").  Adams and Cox argue that Emergent's counts of fraud and violation of the Connecticut Unfair Trade Practices Act (CUTPA), Conn. Gen. Stat. § 42a-110a et seq., fail to state claims upon which relief can be granted. In the alternative, Adams and Cox argue that the case should be stayed.  For the reasons given below, Adams's and Cox's motion to dismiss [Doc. #14] is DENIED as to the count of fraud and GRANTED as to the count of violation of the CUTPA, and the Court declines to stay the case.

      The following facts taken from Emergent's complaint are relevant to the motion to dismiss.  Emergent is a Delaware corporation with its principal place of business in Maryland.  Adams and Cox, who are citizens of Connecticut, are the only members of the executive team of Protein Sciences Corporation ("Protein"). Adams is a director of Protein as well as its president.  Cox is Protein's chief

operating officer.  Protein is a privately held company that has more than 400 shareholders, two of whom are Adams and Cox.

On February 5, 2008, Emergent and Protein signed a letter of intent to negotiate an agreement for Emergent to purchase most of Protein's assets.  A supplement to the letter of intent, dated February 18, 2008, provided that Emergent would loan Protein up to $10 million to fund its operations until Emergent could complete its acquisition of Protein.  The letter of intent also prohibited Protein from soliciting other offers to be acquired while Emergent and Protein were negotiating.

Adams and Cox persuaded Emergent to limit its initial due diligence to its funding of Protein's operations rather than the acquisition.  Emergent thus began by requesting information about Protein's collateral, including real estate, equipment, intellectual property, and accounts receivable.  Adams and Cox failed to cooperate with Emergent, stating that they were too busy and that certain documents requested by Emergent were confidential.  However, Cox stated that she would devote time to Emergent's requests after Protein received a loan from Emergent.  Emergent then signed a loan and security agreement with Protein on March 19, 2008, agreeing to loan Protein up to $10 million.  Emergent provided $3.5 million immediately after signing the agreement and paid the remaining $6.5 million by June 23, 2008.

After receiving the initial $3.5 million, Adams and Cox continued to delay Emergent's efforts to proceed with its due diligence.  In April 2008, Emergent

learned that Protein had received a $1 million wire transfer from another source. Adams claimed to have made the transfer from his children's trust fund, but Emergent later discovered that the source of the money was actually one of its competitors, GlaxoSmithKline.  Although it appeared that Protein had violated the letter of intent by negotiating with a competitor, and despite Adams's and Cox's lack of cooperation with Emergent's due diligence, Emergent continued to loan money to Protein.  Emergent then decided to execute an asset purchase agreement with Protein on May 26, 2008.  The agreement provided for a shareholder approval meeting to occur by June 23, 2008, and the closing of the acquisition by June 30, 2008.

In preparation for the shareholder meeting, Adams and Cox significantly contributed to Protein's proxy statement, which Emergent found to depict the acquisition as unfavorable.  Emergent then learned that Adams and Cox were attempting to convince Protein shareholders to reject Emergent's acquisition.  On June 18, 2008, which was five days before the shareholder meeting, Emergent notified Protein that Protein had defaulted on Emergent's loan by improperly allocating the funds.  On June 22, 2008, which was the day before the shareholder meeting, the chairman of Protein's board notified Emergent that the meeting was postponed.  It has not been rescheduled.

Emergent then sued Protein, Adams, and Cox in New York state court. After the parties stipulated to the dismissal of Adams and Cox for lack of personal jurisdiction in New York, Emergent filed the present action against them

3

in this Court, grounding jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1).  Adams and Cox have filed a motion to dismiss.

The United States Supreme Court recently reexamined the standard governing a motion to dismiss.  "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' . . .  [T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . .  A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. . . .  Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement. . . .

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . .  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. . . .

"[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

4

elements of a cause of action, supported by mere conclusory statements, do not suffice. . . .  Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. . . .  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . .  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'  Fed. Rule Civ. Proc. 8(a)(2)."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).

As to count one of Emergent's complaint, which alleges fraud, Adams and Cox argue that Emergent has failed to state a claim upon which relief can be granted by failing to plead the claim properly.  Fed. R. Civ. P. 9(b) provides in relevant part:  "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. . . ."  "Fed. R. Civ. P. 9(b) requires that, [i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.  To satisfy this requirement, a plaintiff should specify the time, place, speaker, and content of the alleged misrepresentations. . . .  In addition, the complaint should explain how the misrepresentations were fraudulent and plead those events which give rise to

a strong inference that the [defendant] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  <u>Caputo v. Pfizer, Inc.</u>, 267 F.3d 181, 191 (2d Cir. 2001).

In opposition to Adams's and Cox's Rule 9(b) argument, Emergent points out its allegations that Adams misrepresented the source of the $1 million wire transfer and that Cox failed to honor her promise to cooperate with Emergent's due diligence efforts after receiving the initial $3.5 million loan.  Those allegations specify the time, place, speaker, and content of the alleged misrepresentations. Furthermore, the complaint as a whole gives rise to a strong inference that Adams and Cox had the intent to defraud Emergent.  Although one might well question why Emergent continued to loan money to Protein and to pursue the acquisition in light of Adams's and Cox's repeated failures to cooperate, Emergent alleges that it was reassured by Adams's and Cox's false statements. The Court concludes that Emergent has satisfied Rule 9(b).

The Court next turns to count two of Emergent's complaint, which alleges a violation of the CUTPA.  "[I]n determining whether a practice violates CUTPA [the Connecticut Supreme Court has] adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair:  (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2)

6

whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons]. . . . All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." <u>Ventres v. Goodspeed Airport, LLC</u>, 275 Conn. 105, 155, 881 A.2d 937 (2005).

Adams and Cox argue that Emergent cannot bring a CUTPA claim against them because they are in the business of running a pharmaceutical research company, not the business of selling companies.  "[A] CUTPA violation may not arise out of conduct that is merely incidental to the performance of one's trade or commerce." <u>Cornerstone Realty, Inc. v. Dresser Rand Co.</u>, 993 F. Supp. 107, 113 (D. Conn. 1998); see also <u>Sovereign Bank v. Licata</u>, Docket No. 28286, 2009 WL 2461667 at *5 (Conn. App. Aug. 18, 2009).  The Court agrees that the sale of Protein to Emergent was incidental to Adams's and Cox's primary activity of running a pharmaceutical research company.  Count two of Emergent's complaint is therefore dismissed.

Finally, Adams and Cox argue that the Court should stay this action until the resolution of the New York state court action against Protein.  "The decision as to whether to stay a federal action on the ground that there is a related action pending in a state court is committed to the sound discretion of the district court . . . .  In determining whether or not to grant such a stay, the district court should consider such factors as (1) whether the controversy involved a res over which

7

one of the courts has assumed jurisdiction, (2) whether one forum is more inconvenient than the other for the parties, (3) whether staying the federal action will avoid piecemeal litigation, (4) whether one action is significantly more advanced than the other, (5) whether federal or state law provides the rule of decision, and (6) whether the federal plaintiff's rights will be protected in the state proceeding. . . .  No one factor is determinative, and the weight to be given to each may vary substantially from case to case."  <u>United States v. Pikna</u>, 880 F.2d 1578, 1582 (2d Cir. 1989).  As the present case involves different defendants from the New York case, and the surviving fraud claim is brought under Connecticut law, the Court exercises its discretion not to stay this case.

Adams's and Cox's motion to dismiss [Doc. #14] is DENIED as to count one and GRANTED as to count two of Emergent's complaint, and the Court declines to stay the case.

IT IS SO ORDERED.

_____/s/_____
Vanessa L. Bryant
United States District Judge

Dated at Hartford, Connecticut:  August 24, 2009.

8