IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMERGENT BIOSOLUTIONS INC., | |
| Plaintiff, | |
| -against- | Civil Action No. 3:08-cv-1529 (VLB) |
| DANIEL D. ADAMS, AND MANON M.J. COX, | |
| Defendants. | |

## DECLARATION OF MICHAEL DARLING

I, MICHAEL DARLING, hereby declare as follows:

1.      I am the Corporate Controller of Emergent BioSolutions Inc. ("Emergent"), the plaintiff in the above-captioned action.   I submit this Declaration in support of Emergent's Rule 56(a)(2) statement in opposition to the motion for summary judgment filed by Defendants Daniel D. Adams and Manon M.J. Cox in this action.

### Background

2.      As Corporate Controller, I manage all of Emergent's accounting activities, including oversight of accounts payable and accounts receivable; income tax planning and compliance; and financial reporting (including SEC filings and the consolidated financial statements of Emergent).   I report to Don Elsey, Emergent's Chief Financial Officer and Senior Vice President of Finance

and Administration.

<u>Emergent's $10 Million Loan to Protein Sciences Corporation</u>

3.    In early 2008, I learned from my colleagues at Emergent that the company was contemplating an asset purchase of Protein Sciences Corporation ("PSC").  Subsequently, I learned that Emergent had agreed to make a $10 million loan to fund PSC until the deal could close.  I was involved in financial due diligence concerning the planned asset purchase.  I had no role in any of Emergent's scientific or technical due diligence (including the drafting of due diligence reports on those subjects) nor was I apprised of such matters, nor have I ever worked on such scientific or technical matters (including due diligence report preparation on these topics) in my employment at Emergent.

4.    On March 19, 2008, Emergent sent a wire transfer of $3.5 million to PSC, the first installment on the loan.  On April 3, 2008, Emergent sent a wire transfer in the amount of $1.5 million dollars to PSC.  This was PSC's second draw on the loan.

5.    By the time that additional amounts under the loan were to be provided, the Asset Purchase Agreement ("APA"), the contract outlining the terms of the planned asset purchase, was in place.  The APA included as Schedule 7.2(c) a "Cash Disbursement and Contract Interim Approval Process for PSC," which outlined certain procedures for PSC to seek and obtain approval from Emergent for the use of the loan proceeds.  In accordance with this process, PSC was required to submit a proposed list of vendors and payment amounts to Emergent for its approval prior to the release of the loan funds.  I was responsible

for overseeing PSC's vendor payment proposals pursuant to Schedule 7.2(c).

6.     On May 30, 2008, after PSC and Emergent had completed the agreed-upon review and approval process, Emergent released a $3 million payment under the Loan Agreement.  On June 16, 2008, Emergent provided PSC with a final tranche of $2 million in funding that I authorized, having approved the associated vendor payment list provided by PSC.   That brought the amount loaned to PSC to $10 million.

7.     The day after the final $2 million loan installment was wired to PSC, I requested from Brenda Sullivan, PSC's bookkeeper, the check register for the checks that were issued from the $2 million wire transfer.  David Turrill, PSC's Controller, provided the check register to me later that day.  I reviewed it and saw that it did not match the list of vendor payments that I had previously approved.  I attempted to reconcile the approved list with the check register and determined that PSC had paid approximately $200,000 to unapproved vendors, failed to pay approximately $750,000 of approved vendor payments, and failed to account for approximately $550,000 of the loan funds.

8.     I asked Ms. Sullivan why PSC failed to pay approved vendors and paid unauthorized vendors.  She told me that Daniel Adams, who was then PSC's President and Chief Executive Officer (CEO), directed her to disburse the money to these unauthorized vendors.  She did not explain to me why Mr. Adams wanted to pay these vendors instead of the vendors approved by Emergent.   Nor did Mr. Adams ever supply me with an explanation.  Mr. Turrill told me that Mr. Adams told him to retain $250,000 for PSC.  Mr. Adams never explained to me the basis

for his view that he could retain this money.   Although PSC subsequently attempted to cure this problem by paying certain vendors who were previously approved but had not been paid, this did not fully rectify the problem.

9.      Shortly thereafter, I learned that the PSC shareholder meeting to approve the deal did not occur.   I also learned that Emergent had filed suit against PSC, Mr. Adams, and Drs. Cox alleging breach of contract based on the loan misuse and fraud, among other things.   I was not involved in Emergent's decision to file suit.

10.     By December 31, 2008, PSC failed to repay the loan.   Emergent agreed to forbear on the loan and eventually entered into an Amended and Restated Forbearance Agreement ("Forbearance Agreement"), effective March 17, 2009.  By the time the forbearance period under the Forbearance Agreement had expired, Emergent had not received any payment from PSC.

11.     To date, PSC has not repaid any of the $10 million loan, or any interest on the loan or related expenses.   Under PSC's agreements with Emergent, I have calculated the amount due as of August 4, 2010 as $13,166,508.40.  This includes $10 million on the loan principal; $537,753.42 in interest through December 31, 2008 (calculated at an interest rate of eight percent); $229,041.09 in interest from January 1, 2009 through March 17, 2009 (calculated at an interest rate of eleven percent); $229,166.67 in interest from March 18, 2009 through May 31, 2009 (calculated at an interest rate of eleven percent); and $1,672,222.22 in interest from June 1, 2009 through August 4, 2010 (calculated at an interest rate of fourteen percent); debt collection expenses of

Case 3:08-cv-01529-VLB    Document 81    Filed 08/06/10    Page 5 of 6

$500,000.00.    This  total  also  accounts  for  payments  to  Emergent  totaling $1,675.00 from Medicago R&D, a PSC customer.


I  hereby  declare  under  penalty  of  perjury  that  the  foregoing  is  true  and correct.

**Michael Darling**


Dated:        **Rockville, MD**
              **August 4, 2010**

## CERTIFICATION OF SERVICE

This is to certify that on this date, a copy of the foregoing Declaration of Michael Darling was filed electronically and served by mail on any party or counsel unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

Dated:        New York, New York this 6th day of August, 2010

By: **/s/  Catherine Marlantes Rahm**