**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

---------------------------------------------------------------------x
                                 :

**EMERGENT BIOSOLUTIONS INC.,**       :      Civil Action No.
                                 :      3:08-cv-01529-VLB
                 **Plaintiff,**      :
                                 :

        **-against-**            :
                                 :

**DANIEL D. ADAMS, AND MANON M.J. COX,**  :
                                 :

               **Defendants.**   :
---------------------------------------------------------------------x

 

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

 

Edward R. Scofield (CT00455)
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, Connecticut 06604
Telephone:  (203) 332-5726
Email:  escofield@znclaw.com

*Attorneys for Defendants*
*Daniel D. Adams and Manon M.J. Cox*

*Of Counsel*:

Steven Johnson, Esq.
Peter Gallagher, Esq.
Shannon Fields, Esq.
Kennedy Johnson Gallagher LLC
99 Wall Street - 15th Floor
New York, New York 10005
Tel: (212) 248-2220

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................ ii

PRELIMINARY STATEMENT ....................................................................... 1

ARGUMENT .................................................................................................. 6

**A.** **It Is Plaintiff, Not Defendants, Who Must Meet A Heightened Summary Judgment Standard** ........................... 6

**B.** **The Remaining Alleged Misrepresentations Are Too Vague To Constitute Fraud** ............................................... 7

**C.** **Emergent Failed To Raise A Question Of Fact Regarding The Alleged "Move Forward" Statement** ............................... 8

    **(1).** **There Is No False Statement Of Fact** .......................... 8

    **(2).** **Emergent Has No Evidence Of Fraudulent Intent** ...... 9

    **(3).** **Emergent Did Not Reasonably Rely On Mr. Adams' Promise To "Move Forward"** ....................................... 10

**D.** **Emergent Failed To Raise A Question Of Fact Regarding The Alleged "Cooperate With Due Diligence" Statement.** ... 13

    **(1).** **Emergent Was Not Harmed By The Defendants' Alleged Failure To Cooperate With Due Diligence** ..... 13

    **(2).** **There Is No Evidence Of Fraudulent Intent** ................ 13

    **(3).** **Emergent Could Not Have Reasonably Relied On The "Due Diligence" Representation As A Matter Of Law** ......................................................................... 16

    **(4).** **There Is No Evidence That Dr. Cox Failed To Cooperate With Due Diligence** .................................... 18

**E.** **Emergent Cannot Assert A Fraud Claim Based On Dr. Cox's Alleged Promise To "Cooperate" With "The Deal"** .............. 19

**CONCLUSION** ........................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242, 249 (1986) ................................................................................6

*Armstead v. The Stop & Shop Cos.,*
    No. 3:01CV1489 (JBA), 2002 WL 770732
    (D. Conn. April 19, 2002) ................................................................... 10-11, 13

*Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.,*
    117 F.3d 655 (2d Cir. 1997).................................................................... 14-15

*Couldock & Bohan, Inc. v. Société Generale Securities Corp.,*
    93 F. Supp. 2d 220 (D. Conn. 2000) ..................................................... 6-7, 15

*Everpure, Inc. v. Cuno, Inc.,*
    705 F. Supp. 725 (D. Conn. 1988), *aff'd*, 875 F2d 300 (1989) ........................6

*Harold Cohn & Co. v. Harco Int'l, LLC,*
    804 A.2d 218 (Conn. App. 2002) ....................................................................6

*Leonard v. Commissioner of Revenue Services,*
    823 A.2d 1184 (Conn. Sup. Ct. 2003)...........................................................13

*Manning v. Cigna Corp.,*
    807 F. Supp. 889 (D. Conn. 1991) ................................................................17

*Papile v. Robinson,*
    231 A.2d 91 (1967) ...................................................................................... 7-8

Powers v. British Vita, P.L.C.,
    57 F3d 176 (2d Cir. 1995).............................................................................14

*Retrofit Partners I, L.P. v. Lucas Industries, Inc.,*
    201 F.3d 155 (2d Cir. 2000)...................................................................... 11-12

*Savings Bank of Manchester v. Ralion Financial Services, Inc.,*
    881 A.2d 1035 (Conn. App. 2005) ........................................................... 16-17


**Miscellaneous**                                                                            **Page(s)**

Fed. R. Civ. P. 9(b)...........................................................................................10

Restatement (Second) of Torts § 530 (1977)............................................14

**PRELIMINARY STATEMENT**

Emergent's opposition confirms not only that its fraud claim (the Complaint's only cause of action) is concocted, but also that Emergent's dishonesty in this case continues.[1]  Most of Emergent's claim is so baseless that Emergent does not even try to defend it.  Of the five allegedly fraudulent misrepresentations, three were opinions that Mr. Adams allegedly voiced about the outcomes of then-pending regulatory matters.  Though Emergent submitted a 46 page opposition memorandum of law, it does not attempt to refute any of the Defendants' arguments concerning the alleged opinions, thus abandoning what had previously been the heart of its case.

Rather than simply drop the claim after it was exposed as a sham, Emergent tells a new lie to try to cover up its old lie.  In its opposition memorandum, Emergent denies ever having claimed that the alleged opinions were fraudulent.  Pl. Br. at 30.  That is a brazen falsehood.  Emergent alleged in its Complaint that the alleged opinions were fraudulent, it identified the alleged opinions as fraudulent misstatements in two sets of sworn interrogatories, and its witnesses testified at their depositions that the alleged opinions were fraudulent.  Complaint; Johnson Decl. Ex. 29; Johnson Reply Decl. Ex. 37.  In other words, Emergent pursued a claim based on the alleged opinions for as long

---

[1] Unless otherwise defined, capitalized terms have the meaning given them in the Memorandum Of Law in Support of Defendants' Motion For Summary Judgment, dated June 30, 2010 ("Def. Br.").  The Reply Declaration of Steven Johnson in Further Support of Defendants' Motion For Summary Judgment, dated August 23, 2010, is referred to herein as "Johnson Reply Decl."

1

as it thought it could get away with it.  And now that the claim is revealed as a lie, Emergent falsely declares that it never meant to bring the claim in the first place.

Emergent's arguments regarding the two remaining allegedly fraudulent statements are so wanting they confirm that Emergent has no fraud claim based on these alleged statements either.  Emergent essentially ignores the Defendants' contention that both of these alleged misrepresentations -- Mr. Adams' alleged promise to "move forward" in negotiating a possible deal with Emergent, and his and Dr. Cox's alleged promise to "cooperate with due diligence" -- are too vague as a matter of law to be considered fraudulent.  For this reason alone, the part of Emergent's claim that it has not already abandoned should be dismissed.

Leaving that aside, Emergent makes a concession in its opposition that, in and of itself, destroys its "cooperate with due diligence" claim.  After being confronted with evidence showing that it received the due diligence it needed, Emergent concedes what it knew all along - - that it "obtained the due diligence it needed for the deal."  Pl. Br. at 18.  Because a fraud claim can only exist where the plaintiff has suffered harm as a result of the alleged misrepresentation, Emergent's concession means that the portion of its claim based on the alleged "cooperate with due diligence" misrepresentation must be dismissed.

Emergent's opposition also confirms that Emergent has no evidence that it relied on the alleged "cooperate with due diligence" statement, or that the statement was made with fraudulent intent.  Emergent pled that it relied on this statement when it entered into the Loan Agreement and the APA, yet concedes in its opposition that it was Emergent's Board of Directors that decided to enter into

the Loan Agreement and the APA and that the people to whom the alleged misrepresentations were made do not serve on Emergent's Board.  This is another lethal blow because Emergent has no evidence that its Board relied on this alleged statement, or was even aware of it, when it decided to enter into the Loan Agreement or the APA.

As for evidence that the alleged "cooperate with due diligence" statement was made with fraudulent intent, Emergent can only point to its allegations that the Defendants did not cooperate with due diligence (which are insufficient to establish intent as a matter of law), and to unfounded and unsubstantiated personal attacks against the Defendants that have no relevance to whether they intended to cooperate with due diligence when they allegedly said they would.

Finally, Emergent's opposition confirms that the premise of its "cooperate with due diligence" claim is false because, contrary to Emergent's allegations, the Defendants did, in fact, cooperate with due diligence.  Emergent concedes that the Defendants provided it with due diligence, and Emergent has no answer for Mr. Darling's (Mr. Darling, Emergent's Comptroller, was on the due diligence team) damning admission that the Defendants did not try and block due diligence.  Challenged to lay bare its evidence of efforts to obstruct, Emergent's response proves that the claim is invented.  With respect to Dr. Cox, Emergent's "evidence" consists of nothing other than its accusation that she was not pleasant enough with Emergent's executives (Emergent claims she was "hostile," creating "confusion"), and a few emails in which she tried to postpone a meeting (which went forward on the day it was scheduled) and told Mr. Abdun-Nabi that

she was "very busy" when he asked for a telephone call with her (they ended up having the call on the day Mr. Abdun-Nabi wanted).  Pl. Br. at 19; Small Decl. Exs. 33, 37 (see also Ex. 47).  With discovery now complete, the logical inconsistency the Court observed at the beginning of the case – why would Emergent continue to lend PSC money if its management was so uncooperative – has been explained; the Defendants adequately cooperated with due diligence.

Emergent tacitly concedes it has no proof that Dr. Cox obstructed due diligence by trying to change its claim at the 11th hour.  Whereas Emergent had previously represented that its claim against Dr. Cox was based solely on the allegation that she fraudulently promised to cooperate with due diligence, Emergent in its opposition claims for the first time that Dr. Cox also fraudulently promised to cooperate with "the deal;" Emergent claims that this statement was fraudulent because Dr. Cox, contrary to her representation, ended up being opposed to the proposed asset transaction.  Emergent obviously cannot invent a new claim after its old claim is exposed as a sham, and, in any event, its new claim is as frivolous as the old because, *inter alia,* Emergent understood from the start that Dr. Cox was opposed to the transaction.

Emergent's opposition is no more successful in refuting Defendants' arguments concerning the portion of Emergent's claim that is based on the alleged "move forward" statement.  In response to Defendants' argument that the statement is true on its face because Mr. Adams did move forward in negotiating a possible transaction, Emergent can only persist with the argument that Mr. Adams was, in fact, pledging his definitive support  for what eventually became

4

the APA.  But this is an untenable position, considering, *inter alia,* that the person to whom the statement was allegedly made, Emergent's President, Daniel Abdun-Nabi, testified that it was implicit in the statement that Mr. Adams would only support a transaction that was good for PSC's shareholders, a matter that was unknowable at the time because the deal terms had not yet been set.  Johnson Decl. Ex. 10 at 121:21-123:3.

Like the "cooperate with due diligence" statement, the "move forward" statement fails because Emergent cannot prove that it reasonably relied on the alleged statement, or that the statement was made with fraudulent intent.  As a matter of law, Emergent cannot reasonably rely on the statement to mean definitive support for the APA because, after the statement was allegedly made, Emergent signed contracts (the LOI and the Loan Agreement) which stated expressly that neither side was committed to consummating any transaction.  Under Connecticut law, such language puts Emergent on notice that Mr. Adams did not consider himself bound to support any transaction.

Regarding evidence of fraudulent intent, Emergent is reduced, as it was in the context of the alleged cooperate with due diligence statement, to smearing Mr. Adams with unsubstantiated personal accusations that have nothing to do with the issue of fraudulent intent.  For example, it claims that Mr. Adams must have known, in early 2008, that he would not cooperate with discovery because, in 2009, he supposedly engineered a coup of PSC's Board.  These arguments are ludicrous on their face and only highlight Emergent's complete absence of evidence of fraudulent intent.

**ARGUMENT**

**A.  It is Plaintiff, Not Defendants, Who Must Meet A Heightened Summary Judgment Standard**

To succeed on a fraud claim, a plaintiff must prove "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury." *Harold Cohn & Co. v. Harco Int'l, LLC*, 804 A.2d 218, 223-24 (Conn. App. 2002) (internal quotation marks omitted).  The first three of these elements must be proved "by a standard higher than the usual fair preponderance of the evidence, which higher standard [is] described as clear and satisfactory or clear, precise and unequivocal." *Id.* (internal quotation marks omitted); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986) (heightened evidentiary standard for fraud applies on summary judgment).

Emergent cites *Everpure, Inc. v. Cuno, Inc.,* 705 F. Supp. 725, 728 (D. Conn. 1988), to argue that a defendant must meet an "especially heavy" duty to be granted summary judgment on a fraud claim.  Pl. Br. at 15.  That case does not even address a fraud claim, but merely notes in passing that the element of intent is often unsuitable for determination on summary judgment.  *Id.*  Yet, the context of a fraud claim, summary judgment is routinely granted, even on the issue of fraudulent intent, where there is not enough evidence for the jury to find for the plaintiff under a clear and convincing standard.  *Couldock & Bohan, Inc. v. Société Generale Securities Corp.*, 93 F. Supp. 2d 220, 234 (D. Conn. 2000) (granting summary judgment because "Plaintiff has set forth no facts from which

6

the Court could infer that Defendant had a present intention at the time of the making of the clearing agreement not to fulfill" it).

## B. The Remaining Alleged Misrepresentations Are Too Vague To Constitute Fraud

Emergent does not deny that the alleged misrepresentations that remain in the case - - i.e., Mr. Adams' alleged promise to "move forward" and both defendants' alleged promise to cooperate with due diligence - - are susceptible to a host of possible interpretations; it simply argues that they are "not so unconfined as to be compatible with affirmative obstruction of diligence and sabotaging of the deal."  Pl. Br. at 23.  This argument misses the point.  An expression of intent to "cooperate" with a potential business partner - - without specifying in what way - - is little more than a gesture of openness to the contemplated project.  The same is true regarding a promise to "move forward" with the negotiation of a possible deal.  It is impossible to tell, based on the statements themselves, what facts would render them "true" or "false," and whether the defendants might have reasonably "cooperated" or "moved forward" even while rejecting some of Emergent's requests along the way.  It is this lack of precise meaning, in the very nature of the alleged promises, that renders them incapable of being "fraudulent" under Connecticut law.[2]  *Papile v. Robinson*, 231 A.2d 91, 94 (Conn. Cir. Ct. 1967) (statement is too vague to constitute fraud where

---

[2] Emergent also argues that Mr. Adams made a "concrete representation" of support for the APA by signing the Loan Agreement on PSC's behalf.  Pl. Br. at 29.  This argument fails not only because signing a contract on behalf of PSC is not a personal representation by Mr. Adams but also because the Loan Agreement is by no means a pledge of support for the APA even by PSC.  To the contrary, the Loan Agreement is clear that either PSC or Emergent can terminate negotiations of the APA whenever they want.

it has so much "latitude of meaning" that it is not clear what would make it false).
If it were fraud every time a person said they would go forward with the
negotiation of a deal that ultimately did not go through, no one would ever dare to
negotiate.  If it were fraud every time there was a quarrel over whether a person
provided sufficient due diligence, the Courts would be clogged with ridiculous
fraud claims like Emergent's.

**C. Emergent Failed To Raise A Question Of Fact Regarding The Alleged "Move Forward" Statement.**

**(1).  There Is No False Statement Of Fact:**  As set forth in defendants'
opening brief, Mr. Adams did "move forward" with the deal after making this
alleged promise, by negotiating the LOI and Loan Agreement, participating in due
diligence, and spending months negotiating the APA, the material terms of which
were still in flux just days before its execution on May 26, 2008.  Def. Br. at 38-39,
n.6.  Under these circumstances, Mr. Adams easily fulfilled whatever promise he
made to "move forward."

To avoid summary judgment, Emergent tries to present Mr. Adams'
promise as an unconditional commitment to "support" the deal, on which he
allegedly reneged.  Mr. Abdun-Nabi, however—the person to whom this promise
was allegedly made—admitted he never understood Mr. Adams to be making
such a promise.  Rather, it was "[i]mplicit" in Mr. Adams' statement that he would
only support the transaction if, once the deal was negotiated, he believed it would
be "beneficial" to Protein Sciences.  Johnson Decl. Ex. 10 at 121:21-123:3.
Because the alleged promise was not understood as a firm commitment to

8

support the yet-to-be-negotiated deal, and because Mr. Adams did "move forward" with negotiations, this alleged representation cannot possibly be false.

(2).  **Emergent Has No Evidence Of Fraudulent Intent:**  As Defendants argued in their opening brief, a plaintiff may not prove fraudulent intent by showing that the defendant made a promise and then later broke it.  Def. Br. at 27-28, 39.  Despite the law, Emergent's evidence of fraudulent intent, with regard to Mr. Adams's alleged promise to support an asset sale, consists primarily of evidence that Mr. Adams opposed the APA months after agreeing to "move forward."  (For example, Emergent asserts that in June 2008, Mr. Adams tried to persuade shareholders and employees to oppose the APA).  Pl. Br. at 33-34.  Because evidence that a person did not keep a promise (particularly months after the promise was made) is not probative of fraudulent intent, Emergent's evidence does not save Emergent's claim from summary judgment.

Apart from evidence that Mr. Adams did not ultimately support the APA, Emergent has cited only conduct by Mr. Adams that is irrelevant to whether he ever intended to support a deal.  For example, Emergent claims that Mr. Adams sold an expiring patent in late 2008, and that, in 2009, he provided it with a "doctored" profit and loss statement, shredded some documents, fired an employee, and engineered a Board Coup.  *Id.* at 32, 35-36, 38-39.  None of these assertions is at all probative of Mr. Adams' attitude toward an asset transaction in the Spring of 2008.  They are instead obvious attempts to smear PSC with irrelevant, false accusations.  Emergent finally claims that Mr. Adams explored alternatives to the Emergent deal, supposedly indicating that he never intended

9

to "move forward" with Emergent.  Pl. Br. at 31-32.  But the fact that Mr. Adams considered all of PSC's options before the Loan Agreement was signed, and again after he decided the APA was a bad deal for PSC, does not suggest that he was lying when he allegedly promised to negotiate in early 2008.

Emergent also argues that Mr. Adams *must* have acted with fraudulent intent, and that he could not have simply changed his mind over time, because the material terms of the deal did not change over time.  Pl. Br. at 39.  Mr. Abdun-Nabi, however, has admitted that this is not true, given that terms as material as the amount of money that PSC was to be paid were still being negotiated just days before the APA was signed.  Johnson Decl. Ex. 10 at 313:3-15.

(3).  **Emergent Did Not Reasonably Rely On Mr. Adams' Promise To "Move Forward":**  Emergent tries to establish reliance by claiming that it entered into the Loan Agreement and the APA because Mr. Abdun-Nabi regarded Mr. Adams' alleged statement as an expression of unconditional support for the transaction.  Abdun-Nabi Decl. ¶ 14.  But, Mr. Abdun-Nabi has already admitted that he did not understand Mr. Adams, in making this alleged promise, to be pledging his unconditional support for the deal.  Johnson Decl. Ex. 10 at 121:21-123:3. [3]  Moreover, a party cannot create a triable issue of fact by submitting an affidavit that contradicts its prior testimony.  *See Armstead v. The Stop & Shop Cos.*, No. 3:01CV1489 (JBA), 2002 WL 770732, *4 (D. Conn. April 19, 2002) ("factual issues

---

[3] In addition to the fact that it is contradicted by Mr. Abdun Nabi's deposition testimony, Emergent's vague assertion that Mr. Adams provided "various assurances" that he would "support" the transaction is insufficiently specific to constitute fraud as it fails to state the time and place of each alleged misrepresentation, or what was said.  Fed. R. Civ. P. 9(b).

created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial") (internal quotation marks omitted).

Nor can Emergent distinguish this case from *Retrofit Partners I, L.P. v. Lucas Industries, Inc.*, 201 F.3d 155 (2d Cir. 2000), which stands for the settled rule that there is no reliance if, after an allegedly false statement was made, the plaintiff signed an agreement contradicting the alleged misrepresentation.  In *Retrofit*, the Second Circuit dismissed, on summary judgment, a fraud claim, based on a promise, made at the outset of negotiations, that the defendant was "serious" about the deal, and "would" close the deal, because the parties had negotiated a document expressly stating that although negotiations would take place, neither party was yet bound to participate in the project.  *Retrofit,* at 162-63.  Here, as in *Retrofit*, the parties executed the LOI (which stated that neither party was yet bound to close the APA) after Adams allegedly agreed to "move forward," making clear that no one was obligated to support a deal.  Johnson Decl. Ex. 13.  Under *Retrofit*, Emergent's purported reliance on any earlier statements of support was unreasonable as a matter of law.

Emergent argues that *Retrofit* is inapplicable because Emergent "is not relying on the LOI itself as a misrepresentation for purposes of fraud."  Pl. Br. at 44.  This argument fails because, in *Retrofit*, as here, the fraud claim was not premised on a representation in the written statement of intent, but on a prior oral promise by the defendant to close the contemplated deal.  *Retrofit,* at 162.  Emergent also tries to distinguish this case by claiming that "central representations came *after* the LOI," and thus after the parties had agreed that no

11

one was yet bound to the contemplated deal.  Pl. Br. at 44.  The only "representation" Emergent identifies after the LOI, however, consists of Mr. Adams signing the Loan Agreement.  *See* Pl. Br. at 28-30 (§ III.A).  Of course, the act of signing a Loan Agreement on PSC's behalf is not a "representation" by Mr. Adams; but even if it were, it would not distinguish *Retrofit* because (i) there is language in the Loan Agreement, just like in the LOI, making clear that either party may still "terminate[] the negotiations" of the APA  (Johnson Decl. Ex. 1 § 1(b)(i)-(ii)), and (ii) the Loan Agreement did not supersede the LOI, meaning that the nonbinding language of the LOI remained in effect throughout the spring, until the execution of the APA (which, in turn,  expressly precluded Emergent from relying on any unwritten representations).  Small Decl. Exs. 1-3, 5.

Finally, Emergent inexplicably asserts that here, unlike in *Retrofit*, "there is no . . . document contradicting the prior representations" of support by Mr. Adams.  Pl. Br. at 45, n.6.  The language in the LOI and the Loan Agreement, however, contemplating that neither party is bound to execute an agreement, is functionally identical to the relevant contract language in *Retrofit*, which provided that the agreement to negotiate "w[ould] terminate upon any decision by Lucas not to proceed with the program and no other obligations w[ould] exist."  *Retrofit,* at 162-63.  In light of *Retrofit*, Emergent's fraud claim fails as a matter of law.[4]

---

[4] Emergent cannot raise a question of fact regarding reliance for the additional reason that there is no reliable evidence that Emergent ever communicated Mr. Adams' alleged promise of support to the Board, which decided to enter into the Loan Agreement or the APA.  While Mr. Abdun-Nabi states in his declaration (somewhat awkwardly) that the Board "was advised" that Mr. Adams was "committed to completing the asset purchase transaction," the minutes from the Board meeting that he refers to do not reflect any such assurance at all.  Abdun-

**D. Emergent Failed To Raise A Question Of Fact Regarding The Alleged "Cooperate With Due Diligence" Statement.**

**(1).   Emergent Was Not Harmed By The Defendants' Alleged Failure To Cooperate With Due Diligence:**  After being confronted in Defendants' opening brief with deposition testimony from its own executives and employees, and with an internal due diligence report and board presentation, stating that it obtained all the due diligence it needed, Emergent admitted that it received the due diligence it needed.  In light of this admission, Defendants' alleged lack of cooperation with due diligence could not have conceivably caused any material harm to Emergent.  Because injury and causation are required elements of fraud, Emergent has no claim based on its due diligence allegations as a matter of law.  *Leonard v. Commissioner of Revenue Services*, 823 A.2d 1184, 1191 (Conn. Sup. Ct. 2003) (injury and causation are required elements of fraud).

**(2).   There Is No Evidence Of Fraudulent Intent:**  Emergent has not raised a question of fact as to whether either defendant acted with fraudulent intent in promising to "cooperate" with due diligence.  With regard to Dr. Cox, Emergent offers no evidence relating to due diligence at all other than a few instances—discussed in Section D (4), *infra*—in which she supposedly refused to schedule

---

Nabi Decl. ¶16; Small Decl. Ex. 52.  Nor does Mr. El-Hibri, who is actually on the Board, remember being told as much.  At his deposition, the only thing he could recall Mr. Abdun-Nabi saying to the Board about Mr. Adams' personal opinions was that Mr. Adams believed a bridge loan would be necessary in order for an asset purchase to take place.  Johnson Reply Decl. Ex. 39 at 67:20-68:21.  In his declaration in opposition to this motion, Mr. El-Hibri supposedly recalls, in contrast to his earlier deposition testimony, that Mr. Abdun-Nabi also told the board that "Mr. Adams was confident that an agreement . . . would be signed shortly." El-Hibri Decl. ¶ 5.  Emergent cannot avoid summary judgment by relying on an affidavit in which a witness contradicts his earlier testimony.  *See Armstead v. The Stop & Shop Cos.*, No. 3:01CV1489 (JBA), 2002 WL 770732, *4 (D. Conn. April 19, 2002).

meetings (Pl. Br. at 18-19; Small Decl. Exs. 37, 40), or insisted on being included

in the due diligence process (Pl. Br. 18-19; Small Decl. Exs. 39, 17 at 286-87, and

64).  As explained above, fraudulent intent to break a promise (such as the

promise to cooperate) cannot be shown by proof that the promise was eventually

broken.  RESTATEMENT (SECOND) OF TORTS § 530 cmt. d (1977).  As a result, this

evidence - - all of which relates to a time period at least a month after her alleged

promise - - is not sufficient to raise a question of fact regarding fraudulent intent.

Emergent has declined to distinguish the cases defendants cite for this

proposition, relying instead on a handful of New York federal cases holding that,

under certain limited circumstances, a breach of promise may provide some

evidence of fraudulent intent.  Pl. Br. at 24-25.  Even if those cases were binding

in this lawsuit, Emergent has made no effort to show that the circumstances

required in order to invoke them—*i.e.*, that the breach must occur *immediately*

following the promise, and it must be a "malicious[]" breach—are present here

(they are not).  *See, e.g., Powers v. British Vita, P.L.C.*, 57 F3d 176, 182, 185 (2d

Cir. 1995) (proving fraudulent intent was not impossible where defendant

"maliciously" breached the relevant agreements so soon after they were

executed that "[t]he ink was hardly dry").[5]

_____

[5] Emergent alleged that Dr. Cox breached, in late April 2008, a promise
supposedly made in mid-March 2008, thus precluding Emergent from arguing that
the breach was immediate, as would be required for it to invoke *Powers*.  Nor can
Emergent establish that whatever breach of this obligation she may have
committed was "malicious" under *Powers.*  The Second Circuit, applying the line
of cases Emergent relies on, has held that where a party performed a promise to
some degree (as Dr. Cox did here), (*see* Johnson Decl. Ex. 31), fraudulent intent
cannot be inferred based on evidence that that party may not  have performed the
promise well.  *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664

Likewise, with regard to Mr. Adams, Emergent's proof relating to due diligence consists primarily of instances in which he supposedly did not cooperate after making the promise, meaning that it is incapable of showing that he *never intended* to cooperate.  Emergent argues, for example, that Mr. Adams concealed information about the source of a bank deposit on April 22, 2008 (Emergent found out the true source within an hour, and it has conceded that it suffered no adverse consequences [Johnson Reply Decl. Ex. 40 at 247:3-248:9, 249:3-9]), and that he provided Emergent with a "doctored" profit and loss statement almost a year later.  Pl. Br. at 31-32.  Because these alleged breaches did not occur immediately after Mr. Adams' promise, they cannot prove fraudulent intent even under the legal standard Emergent advocates.  *Couldock & Bohan, Inc. v. Société Generale Securities Corp.*, 93 F. Supp. 2d 220, 234 (D. Conn. 2000).[6]

Emergent also claims that Mr. Adams must have meant to defraud it because he failed to "timely" disclose two issues during due diligence: (i) that PSC had executed a contract that would have affected its ability to manufacture FluBlok, and (ii) that Mr. Adams had "moved FluBlok's lab operations . . . into a

---

(2d Cir. 1997) ("[w]e hesitate to find that merely ailing performance can be found malicious enough to support a claim of fraud, especially where" there were reasonable explanations for the alleged failure to perform the contract well). Here, because it is clear that Dr. Cox "cooperated" to some degree with Emergent's due diligence process (Johnson Decl. Ex. 31), the fact that she may not have cooperated as much as Emergent would have liked given her extraordinarily busy schedule is not proof of fraudulent intent, even under the line of cases Emergent relies on.

[6] As explained above, the Second Circuit has held that a breach of contract cannot possibly prove fraudulent intent unless it is such an extreme breach that it can fairly be called "malicious," as well as immediate.  *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 664 (2d Cir. 1997)

facility that PSC was occupying without a written lease."  Pl. Br. at 32-33.
Emergent offers no evidence to suggest that these alleged breaches (if one can
call them that, given that Emergent admits Mr. Adams did disclose these issues)
were immediately after the alleged promise, so as to prove fraudulent intent at
that time.  Nor can it show that these disclosures were material.  To the contrary,
upon learning of these alleged omissions, Emergent proceeded with the APA and
voluntarily continued to fund the Loan Agreement, meaning that it cannot show
these alleged omissions were material to it.

The only other evidence Emergent offers to prove fraudulent intent, on the
due diligence claim, is not rationally related to due diligence at all, but is directed
instead at showing that the defendants never intended to "cooperate" with "the
deal."  This evidence is irrelevant to Emergent's due diligence claim (for a
discussion of it nonetheless, *see* Sections B, E).

(3).  Emergent Could Not Have Reasonably Relied On The "Due Diligence"
Representation As A Matter Of Law:  The notion that Emergent relied on this
statement in any material way is belied by the very legal theory it invokes to avoid
summary judgment, *i.e.*, that the defendants' refusal to cooperate with due
diligence was both "immediate" and extreme (although, to be fair, Emergent
never actually argues or explains why that theory should apply here).  If the
defendants had immediately begun sabotaging Emergent's attempts to gather
information, any reliance on an earlier promise to cooperate would have been
unreasonable as a matter of law.  *Savings Bank of Manchester v. Ralion Financial
Services, Inc.*, 881 A.2d 1035, 1038 (Conn. App. 2005) ("the plaintiff did not rely on

the misrepresentation" because, at the time the contract was executed, the plaintiff "knew" it was false).  The Court actually foreshadowed this issue in its decision on the Motion to Dismiss, noting that "one might well question why Emergent continued to loan money to Protein and to pursue the acquisition in light of Adams's and Cox's repeated failures to cooperate."  Memorandum of Decision, dated Aug. 24, 2009 at 6.[7]

Emergent also fails to raise a question of fact as to reliance because it concedes its Board never knew about the "due diligence" promise before deciding to approve the Loan Agreement and APA.  As set forth in Defendants' opening brief, the Board could not possibly have relied on a promise it did not know about.  *Manning v. Cigna Corp.*, 807 F. Supp. 889, 897 (D. Conn. 1991).

Emergent argues that it can prove reliance because Mr. Abdun-Nabi and Ms. Esposito relied on the "due diligence" promise in *recommending* that the Board approve the Loan Agreement and APA.  Pl. Br. at 43-44.  Emergent cannot, however, contort an allegation of reliance by Mr. Abdun-Nabi or Ms. Esposito into proof that the Board itself relied on this promise. It is clear from the relevant minutes that the Board did not simply act on Mr. Abdun-Nabi or Ms. Esposito's recommendations, but rather, it reviewed the material information and made its own decision to proceed.  Small Decl. Ex. 52.  There is no indication that anyone discussed whether the Defendants would cooperate with due diligence, nor,

---

[7] **Memorandum of Decision Denying in Part and Granting in Part Defendants' Motion to Dismiss and Denying Defendants' Motion to Stay, dated August 24, 2009, Doc. #14.**

apparently, did anyone believe this promised material enough to include in the mix of information being presented to the Board.

(4).  There Is No Evidence That Dr. Cox Failed To Cooperate With Due Diligence:  Finally, Emergent cannot raise a question of fact as to whether Dr. Cox materially obstructed its due diligence efforts, as would be necessary to render her alleged promise to "cooperate" false.  Emergent relies on a handful of e-mails that reflect, at most, that Dr. Cox was unable to schedule a meeting during a given week, that she wanted to be notified when Emergent sought information from PSC's employees, or that she wanted to reschedule a proposed meeting (which Emergent held anyway in spite of her request, and at which Emergent met "one on one" with Dr. Cox, made a presentation to PSC's employees, and reported back that "it went fine").  Small Decl. Exs. 37, 39, 40, 64.  These are the sort of mundane scheduling conflicts that inevitably occur when busy professionals coordinate a substantial project together; they do not support an inference that Dr. Cox stood in Emergent's way as it conducted due diligence.  Indeed, the very same string of e-mails that Emergent relies on to show that Dr. Cox obstructed due diligence actually shows Dr. Cox setting up meetings with Emergent, *i.e.*, cooperating with due diligence.  Small Decl. Exs. 37, 39.

Literally the only other evidence Emergent can point to consists of a few e-mails from late May and early June, 2008 in which Dr. Cox made comments that were supposedly "hostile" to the deal, and for which she apparently "refused to explain herself."  Pl. Br. at 19; Small Decl. Exs. 34-37.  That Dr. Cox disfavored the deal, however, should have been unsurprising to Emergent, given that it was

aware that she opposed the deal at least as of February 2008.  Johnson Reply Decl. Ex. 41 at 58:3-4, 59:19-22.  More to the point, Emergent never explains how these emails could conceivably show that Dr. Cox obstructed due diligence.

### E.  Emergent Cannot Assert A Fraud Claim Based On Dr. Cox's Alleged Promise To "Cooperate" With "The Deal"

Given the hopeless state of its due diligence claim (which is the only one it has asserted against Dr. Cox), Emergent, for the first time in its summary judgment papers, tries to contort that claim into a brand new one.  To this end, Emergent now alleges that Dr. Cox promised to "cooperate" not only with due diligence, but also with "the deal" more generally.  Emergent, of course, never alleged this representation anywhere in its 31 page, 111 paragraph Complaint.  Nor did Emergent identify this representation in its interrogatories, even though the defendants specifically asked Emergent to identify all of the representations it was relying on to support its claim.  Johnson Decl. Ex. 29.

But Emergent's own admissions prove that this new allegation is just another frivolous concoction designed to avoid summary judgment at the last minute.  Emergent has readily conceded that it knew in February 2008, and throughout the rest of the spring, that Dr. Cox was adamantly *opposed* to "the deal," yet it proceeded with the Loan Agreement and the APA anyway.  Small Decl. Ex. 47; Johnson Decl. Ex. 16 at 144:11-22; Johnson Reply Decl. Ex. 41 at 58:3-4, 59:19-22.  Emergent admitted, in fact, that it asked Dr. Cox to support the deal, and she *refused* to commit her support.  Johnson Reply Decl. Ex. 40 at 203:22-204:19; Ex. 41 at 58:3-4, 59:19-22.  Between the complete absence of this allegation from the Complaint and interrogatories, and the fact that Dr. Cox

actually rejected a request to support "the deal," it is not believable that she promised to "cooperate," whatever that might mean.  For this reason, almost all of Emergent's evidence relating to Dr. Cox - - including the evidence that Dr. Cox advocated that employees and shareholders oppose the deal (Pl. Br. at 20-23), that she requested funds under the Loan Agreement even though she knew Emergent favored an asset deal (*id.* at 25), that she considered alternative transactions (*id.* at 26), or that she "slandered" Emergent after Emergent filed an improper involuntary bankruptcy petition against PSC (*id.* at 26-27) - - is wholly irrelevant to this motion and incapable of saving Emergent's fraud claim from summary judgment.

Nor is it fair, in all events, for Emergent to fabricate a new misrepresentation at this stage of the proceedings.  Defendants never had the opportunity to conduct discovery or depositions regarding this alleged representation, and there is no reason why - - if this allegation were really true - - Emergent could not have alleged it in a timely manner.

### CONCLUSION

For all of the foregoing reasons, PSC's motion in further support of their motion for summary judgment dismissing the Complaint, should be granted in its entirety.

By:  *Edward R. Scofield*
      Edward R. Scofield (ct00455)
Zeldes, Needle & Cooper, P.C.
1000 Lafayette Boulevard
Bridgeport, Connecticut 06604
Telephone:  (203) 332-5726
Email:  escofield@znclaw.com

*Of Counsel*:

**Steven Johnson, Esq.**
**Peter Gallagher, Esq.**
**Shannon Fields, Esq.**
**Kennedy Johnson Gallagher LLC**
**99 Wall Street - 15th Floor**
**New York, New York 10005**
**Tel: (212) 248-2220**

*Attorneys for Defendants*
*Daniel D. Adams and Manon M.J. Cox*

PCLAW13967