UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| EMERGENT BIOSOLUTIONS INC., <br><br> Plaintiff, <br><br> v. <br><br> DANIEL D. ADAMS, AND <br><br> MANON M.J. COX, <br><br> Defendants. | Civil Action No. 3:08-cv-1529 (VLB) <br><br> September 10, 2010 |

SUR-REPLY MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Jonathan B. Orleans (CT05440)
Pullman & Comley, LLC
850 Main Street, P.O. Box 7006
Bridgeport, CT 06601-7006
tel.: (203) 330-2000
fax: (203) 330-2288
email: jborleans@pullcom.com

Howard M. Shapiro, admitted *pro hac vice*
Anne K. Small, admitted *pro hac vice*
Charu A. Chandrasekhar, admitted *pro hac vice*
Catherine Marlantes Rahm, admitted *pro hac vice*
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
tel.: (212) 230-8800
fax: (212) 230-8888
email: catherine.rahm@wilmerhale.com

*Attorneys for Plaintiff Emergent BioSolutions Inc.*

- i -

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

ARGUMENT ....................................................................................................... 2

I. Defendants Face A Heavy Burden In Moving For Summary Judgment .......... 2

II. Defendants' Misrepresentations Provide Grounds For A Finding Of Fraud ... 3

III. Defendants' Representations Were False: They Failed To Cooperate With Diligence Or The Transaction And Adams Failed To Support The Deal ......... 5

IV. Defendants Made Their False Statements With Fraudulent Intent................... 7

V. Defendants' Reliance Arguments Do Not Eliminate The Disputed Facts...... 10

VI. Defendants' Misrepresentations Harmed Emergent ........................................ 12

CONCLUSION ................................................................................................ 12

## **TABLE OF AUTHORITIES**

## **CASES**

*Bowen v. Daley,*
    No. CV 90 0381268, 1994 WL 197592 (Conn. Super. Ct. Apr. 28, 1994) ............... 9

*Byrnie v. Cromwell,*
    243 F.3d 93 (2d Cir. 2001) ....................................................................................... 8

*Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.,*
    117 F.3d 655 (2d Cir. 1997) ................................................................................... 10

*Citizens Bank of Clearwater v. Hunt,*
    927 F.2d 707 (2d Cir. 1991) ..................................................................................... 3

*Claudia v. Olivieri Footwear Ltd.,*
    No. 96 Civ. 8052, 1998 WL 164824 (S.D.N.Y. Apr. 7, 1998) ................................ 4, 5

*Couldock & Bohan, Inc. v. Societe Generale Securities Corp.,*
    93 F. Supp. 2d 220 (D. Conn. 2000) ...................................................................... 10

*DSP Software Engineering, Inc. v. NCT Group, Inc.,*
    No. CV000370062S, 2000 WL 1228601 (Conn. Super. Ct. Aug. 14, 2000) ............ 2

*Everpure, Inc. v. Cuno, Inc.,*
    705 F. Supp. 725 (D. Conn. 1988) ....................................................................... 2, 3

*In re Roberti,*
    201 B.R. 614 (Bankr. D. Conn. 1996) ................................................................... 4, 5

*Kaytor v. Electric Boat Corp.,*
    609 F.3d 537 (2d Cir. 2010) ..................................................................................... 2

*Kelley v. Bonney,*
    606 A.2d 693 (Conn. 1992) ...................................................................................... 8

*Label Systems Corp. v. Aghamohammadi,*
    852 A.2d 703 (Conn. 2004) .................................................................................... 12

*Martinez v. Zovich,*
    867 A.2d 149 (Conn. App. Ct. 2005) ...................................................................... 10

*McKay v. Mad Murphy's, Inc.,*
    899 F. Supp. 872 (D. Conn. 1995) ........................................................................... 3

*Nanopierce Technologies, Inc. v. Southridge Capital Management*,
 No. 02 Civ. 0767 (LBS), 2004 U.S. Dist. LEXIS 24168 (S.D.N.Y. Dec. 2, 2004) ..... 9

*Papile v. Robinson*,
 231 A.2d 91 (Conn. Cir. Ct. 1967) .............................................................................. 3

*Powers v. British Vita, P.L.C.*,
 57 F.3d 176 (2d Cir. 1995) ......................................................................................... 9

*Retrofit Partners I, L.P. v. Lucas Industries, Inc.*,
 201 F.3d 155 (2d Cir. 2000) ............................................................................. 10, 11

*Russo v. DeWolfe Co.*,
 No. CV054001918, 2006 WL 3200331 (Conn. Super. Ct. Oct. 23, 2006) ................ 3

*Sheehy v. New Century Mortgage Corp.*,
 690 F. Supp. 2d 51 (E.D.N.Y. 2010) ......................................................................... 2

*U.S. v. Preldakaj*,
 No. 08 CR 1054, 2010 WL 3154560 (S.D.N.Y. Aug. 3, 2010) ................................... 8

*Zapolsky v. Sacks*,
 464 A.2d 30 (Conn. 1983) .......................................................................................... 8

Faced with substantial evidence of fraud, Defendants' Reply Memorandum of Law in Further Support of Defendants' Motion for Summary Judgment ("Reply") seeks to distract the Court by impugning Emergent.[1] But, despite its charged rhetoric, the Reply only confirms that the evidence readily supports a jury finding of fraud. Defendants, desperate for funds to keep their company afloat, falsely represented that they would cooperate with an asset purchase acquisition by Emergent and with related due diligence in order to induce Emergent to provide $10 million in bridge financing in contemplation of the asset purchase deal. Contrary to their representations, Defendants never planned to—and did not—cooperate with the deal or diligence. Rather, they wanted to keep the company under their control and just wanted Emergent's money—so they actively sabotaged the asset purchase deal, even as they continued to draw down on Emergent's bridge loan (which has yet to be repaid). The record supports each element of fraud for each Defendant, and Defendants' unsupported legal assertions and efforts to argue facts do not suggest otherwise.

Defendants cannot overcome the evidence by attacking Emergent for supposedly misleading them by shifting its claims. Emergent has been clear about the contours of its fraud claim and the multiple misrepresentations supporting that claim since the Complaint was filed almost two years ago.[2] That

---

[1] Defined terms have the meaning provided in Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment ("Opposition"). The Sur-Reply Declaration of Anne K. Small in Further Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment dated September 10, 2010 is referred to herein as "Small Sur-Reply Decl." The standalone references to "Ex." continue to refer to the exhibits to the August 4, 2010 Small Declaration.

[2] *See, e.g.,* Compl. ¶¶ 104-07; *id.* ¶ 104(a) (misrepresentations included that

the precise facts supporting these claims and the emphasis Emergent places on certain issues has evolved during discovery is entirely unremarkable—it is the very purpose of discovery.  *DSP Software Eng'g, Inc. v. NCT Group, Inc.*, No. CV000370062S, 2000 WL 1228601, at *3 (Conn. Super. Ct. Aug. 14, 2000) (discovery and trial provide "ample opportunity to develop … claims").

## ARGUMENT

**I.     Defendants Face A Heavy Burden In Moving For Summary Judgment**

Contrary to the Reply (at 6-7), there is no error in Emergent's discussion of the summary judgment standard.  On summary judgment, a court is "not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010).  Defendants concede that *Everpure, Inc. v. Cuno, Inc.*, 705 F. Supp. 725 (D. Conn. 1988), found that "the element of intent is often unsuitable for determination on summary judgment."  Reply 6.  They argue the case is inapposite because it did not involve a fraud claim (*id.*), but the principles of *Everpure* are equally applicable in fraud cases.  "The onus placed upon a movant for summary judgment on a claim of inequitable conduct is especially heavy, as the claim necessarily involves determinations as to the intent of the

---

"Adams actively supported the transaction" and that "Adams and Cox would cooperate with Emergent's diligence efforts"); Pl.'s Mem. of Law. in Opp. to Defs.' Mot. to Dismiss the Compl. at 1 ("Contrary to Defendants' representations, they never supported the acquisition or intended to carry through with it, and merely proposed it as a means to induce Emergent to provide PSC with funds needed to avoid financial collapse."); Ex. 56 at Interrog. Resp. 4-7, 13-14; Opp. 1-3.  That Emergent may now be pursuing and relying on certain allegations and facts instead of others is not a "sham" (Reply 1), but merely means that some allegations are more robustly supported by the discovered evidence.  *See Sheehy v. New Century Mortgage Corp.*, 690 F. Supp. 2d 51, 66-67 (E.D.N.Y. 2010).

party accused of practicing the fraud and the materiality of his alleged misrepresentations or omissions—issues which are typically not appropriate for resolution in a summary fashion." 705 F. Supp. at 728. *See also McKay v. Mad Murphy's, Inc.*, 899 F. Supp. 872, 882 (D. Conn. 1995); *Citizens Bank of Clearwater v. Hunt*, 927 F.2d 707, 711 (2d Cir. 1991).

II. Defendants' Misrepresentations Provide Grounds For A Finding Of Fraud

Defendants' arguments that the misrepresentations do not provide the basis for a fraud claim lack case support and turn on disputed factual issues.

*First*, Adams's and Cox's statements that they would cooperate with diligence are not "too vague to constitute fraud" (Reply 7). Defendants' sole case support, *Papile v. Robinson*, 231 A.2d 91, 94 (Conn. Cir. Ct. 1967), held that representations that a well would supply "sufficient" and "adequate" water "possess[ed] so much latitude of meaning as to constitute mere statements of opinion rather than expressions of precise facts." 231 A.2d at 94. Unlike *Papile*, Defendants' representations that they would themselves cooperate with diligence cannot be described as statements of opinion—they are factual statements regarding Defendants' own plans. Nor are the statements so vague that "it is not clear what would make [the statements] false," (Reply 8). The factual record here shows that these statements are false. *See infra* Part III. Regardless, summary judgment on a fraud claim is inappropriate where, as here, "the 'vagueness,' truth or falsity of these statements" are "unresolved" matters. *Russo v. DeWolfe Co.*, No. CV054001918, 2006 WL 3200331, at *3 (Conn. Super. Ct. Oct. 23, 2006).

*Second*, Defendants do not dispute that Cox's statements that she would cooperate with the deal can serve as the basis for a fraud claim. Rather, they

- 3 -

argue that the deposition testimony that Cox told Emergent she would cooperate with the deal is "not believable" (Reply 20)—but such credibility determinations are for the jury. Nor is summary judgment warranted by Defendants' false complaints that this is the "first time" Emergent identified this misrepresentation and that they should have the "opportunity to conduct discovery or depositions" (Reply 19-20). Defendants already took advantage of this opportunity; Abdun-Nabi already identified this statement in his deposition and the subject matter falls within the broad scope of Defendants' document requests. Opp. 16-17, Ex. 8 at 197-202; Ex. 56 at Request Nos. 5, 11.

*Third*, Defendants effectively concede that Adams's oral statements that he supported the asset purchase can provide the basis for fraud,[3] but do argue that Adams's signature on the Loan Agreement cannot be a fraudulent statement (Reply 7 n.2, 12). But case law is clear that a signature is a "statement" that alone can form the basis of a fraud claim. *See In re Roberti*, 201 B.R. 614, 627 (Bankr. D. Conn. 1996) (fraud claim based on defendant's signing of loan document, guaranty, and signature card; "the existence of the signed documents is sufficient to find that the defendant made a false representation" (internal quotation omitted)); Opp. 29-30. And any challenge to the significance of Adams's signature on the Loan Agreement creates a genuine issue of material fact precluding summary judgment. *See Claudia v. Olivieri Footwear Ltd.*, No. 96 Civ. 8052, 1998 WL 164824, at *10 (S.D.N.Y. Apr. 7, 1998) ("genuine issues of

---

[3] The argument that Adams's statements of support are insufficiently pled under Fed. R. Civ. P. 9(b) (Reply 10 n.3) ignores the detailed allegations that sufficed to avoid dismissal once before, *see, e.g.,* Compl. ¶¶ 6, 10, 104, and also ignores the details since provided. *See* Ex. 56 at Interrog. Resp. 4, 13.

material fact" regarding "significance," "meaning" and "interpretation" of signatures in contract dispute supported denial of summary judgment). Thus Defendants also cannot avoid trial by asserting that the signature is not a "personal" representation; this argument fails to contend with the facts that, as CEO, it was Adams's decision to enter into the Loan Agreement and he had control over the company's ability to comply with the contract and pursue the asset purchase. Moreover, by later refusing to sign the APA because of his opposition, Ex. 9 at 77-78, Adams made clear that he viewed his signature on the Loan Agreement as a personal representation. The case law confirms this conclusion. *See Roberti*, 201 B.R. at 627 ("'The significance of a signature appearing on documents . . . lies in the fact that a signature is the name of a person written with his own hand to signify that the writing which precedes accords with his wishes or intentions.'" (citation omitted)). Finally, Defendants cannot point to the Loan Agreement's provision permitting both companies to walk away from the asset purchase deal to argue that Adams's signature does not represent his commitment to the underlying deal (Reply 12): this opt-out provision in the bridge loan contract cannot transform it into a license for Adams to secretly sabotage the deal while taking Emergent's money for PSC.

III. **Defendants' Representations Were False: They Failed To Cooperate With Diligence Or The Transaction And Adams Failed To Support The Deal**

Contrary to Defendants' arguments, the record more than suffices to create a disputed issue of fact as to whether the representations were false.

Although Defendants insist that the statements of cooperation with diligence were not false because they did cooperate with diligence, the evidence

- 5 -

shows that falsity is a disputed fact. Among other things, Adams provided Emergent with doctored profit and loss statements and failed to disclose critical information regarding the company's contracts and manufacturing status, while Cox stalled diligence by insisting on being involved in Emergent's diligence and then making herself unavailable, cancelling meetings at the last minute, and sending menacing unexplained emails to Emergent employees raising purported problems with the deal. Opp. 31-33, 18-20. Accordingly, Defendants' blanket assertion that Adams did cooperate with diligence (Reply 3) creates, rather than eliminates, a disputed fact. And their downplaying the evidence against Cox as "mundane scheduling conflicts" (Reply 18) likewise ignores the jury's role.[4]

Defendants do not even try to argue that Cox's representation that she would cooperate with the deal was truthful.[5] The falsity of her statement is well supported by the evidence, including, among other things, her shareholder letter filled with lies encouraging votes against the asset purchase deal. Opp. 18-23.

Similarly with respect to Adams, Defendants offer no argument that, as a legal matter, Adams cooperated with the deal. The record evidence makes clear his failure to cooperate with the deal, including by lying to PSC employees,

---

[4] Nor do the controller's testimony about his diligence experience and evidence that Emergent later obtained the diligence it needed (Reply 3) resolve whether Defendants cooperated as a legal matter; the evidence shows that others at Emergent faced diligence obstacles and that it obtained diligence because of its own perseverance over Defendants' noncooperation. Opp. 18-20, 31-33.

[5] Defendants argue that Emergent *knew* Cox would not cooperate because Emergent knew that she "opposed" the deal. Reply 4, 19-20. But this view not only contradicts her sworn statement that she *did* at one time support the transaction (Ex. 63 at Interrog. Obj. & Resp. 4), but also fails to acknowledge that supporting a deal and cooperating with it are different; one can truthfully represent that one will cooperate even if one opposes a deal.

- 6 -

seeking an alternative deal, and lobbying shareholders to oppose the deal. Opp. 31-34. Defendants merely contend that Adams "moved forward" with the deal on the basis that he negotiated various agreements and participated in diligence. Reply 8. But whether such activities are evidence that Adams cooperated with the deal or are merely cover for his fraudulent plan is a question for the jury.

On Adams's statement that he supported the deal, Defendants argue that it "cannot possibly be false" because his statement of support was conditioned on the transaction benefitting PSC. Reply 8-9.[6] But the Emergent deal *was* beneficial for PSC, as affirmed to the shareholders in PSC's proxy statement. *See* Ex. 27 at 16, 19. This theory also fails because it would require Adams to have changed his mind about the deal—but there is no basis for his doing so as the deal terms under the APA were materially the same as when he first signed the agreements. *See* Opp. 7, 39-40. Arguments that the parties continued to negotiate details of the absorption of tax liability (Reply 10; Johnson Decl. Ex. 10 at 312-13) merely dispute whether there was a factual basis for a changed view.

IV.    Defendants Made Their False Statements With Fraudulent Intent

Defendants' argument (Reply 9, 14) that failure to cooperate with the deal and diligence does not establish fraudulent intent ignores the facts and the law.

The evidence of intent goes well beyond the mere failure to cooperate with the deal and diligence; there are ample additional "indicia or badges of fraud,"

---

[6] Defendants suggest that Emergent has changed its story about Adams's representation of support, arguing that Abdun-Nabi's declaration contradicts his deposition testimony. *See* Reply 10. But the declaration does not contradict the deposition, *see* Abdun-Nabi Decl. ¶ 14; Johnson Decl. Ex. 10 at 123. Moreover, the conditional statement of support does not change the analysis, for the reasons described above.

supporting an inference of fraudulent intent. *Zapolsky v. Sacks*, 464 A.2d 30, 34 (Conn. 1983). Adams shredded documents after a litigation hold was in effect; fired the employee who testified about the shredding; sold collateral securing Emergent's loan without telling Emergent; and demanded and accepted Emergent's loan funds, which he knew were given in contemplation of the deal closing, even as he secretly worked to sabotage the deal, and then misused those funds for his own benefit. Opp. 34-39. Cox similarly continued to demand and accept Emergent's funds even as she incited shareholder opposition with outright lies about Emergent, actively sought out alternative deals, and slandered Emergent when it dared to seek repayment of the loan. Opp. 24-27.

      Defendants' response is to insist that this deceptive misconduct and bad faith behavior is "irrelevant" to and not "probative" of their intent. Reply 3, 9-10. But circumstantial evidence, such as this, does support a finding of fraudulent intent. *Kelley v. Bonney*, 606 A.2d 693, 711 (Conn. 1992) ("[O]rdinarily, intent can only be proved by circumstantial evidence; it may be and usually is inferred from the defendant's conduct." (internal quotations omitted)). Moreover, where that evidence reflects an awareness of improper conduct and efforts to conceal it— including shredding documents, lying about alternative transactions, and slandering Emergent to the press to avoid the consequences of the misconduct— the probative value of such evidence is apparent. *Cf. Byrnie v. Cromwell*, 243 F.3d 93, 107-11 (2d Cir. 2001) (spoliation of evidence supports adverse inference); *U.S. v. Preldakaj*, No. 08 CR 1054, 2010 WL 3154560, at *3 (S.D.N.Y. Aug. 3, 2010) (false exculpatory statements as evidence of consciousness of guilt).

Furthermore, Defendants are wrong as a legal and factual matter that the evidence relating to their failure to cooperate with the deal and diligence cannot support a finding of fraudulent intent. In Connecticut (as in New York), the "malicious[]" and prompt breaking of a promise raises an inference of fraudulent intent. *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 185 (2d Cir. 1995); *Bowen v. Daley*, No. CV 90 0381268, 1994 WL 197592, at *5-6 (Conn. Super. Ct. Apr. 28, 1994); Opp. 24-25. Defendants assert that the facts here do not fit that paradigm, Reply 14 & n.5, 15 n.6, but this is a jury question given the evidence that Defendants did not simply fail to cooperate with the deal and diligence, but rather maliciously undermined diligence and sabotaged the deal. The record shows that Cox concededly lied to shareholders and employees to drum up opposition and Adams lied about and concealed diligence matters from Emergent, including by supplying false profit and loss statements,[7] and encouraged shareholders to vote down the deal, among other things. Opp. 20-27, 31-39. Defendants' argument that their failure to keep their promises was not "immediate" enough (Reply 14 & n.5, 15 n.6) similarly presents a jury question. The case law does not set a specific time limit. *See, e.g., Nanopierce Techs., Inc. v. Southridge Capital Mgmt. LLC*, No. 02 Civ. 0767 (LBS), 2004 U.S. Dist. LEXIS 24168, at *24-25 (S.D.N.Y. Dec. 2, 2004) (describing the breach as "almost immediate[]," or "within a month," and also taking into account things that happened "[w]ithin a week" and "[d]uring the remainder of the year"). Where, as here (*see supra* at p. 7), there are no changed

---

[7] The false financial statements were not given "a year later" (Reply 15); Emergent only *found out* about them in discovery the next year, *see* Opp. 32.

circumstances to provide an innocent explanation for the alleged change of heart, the length of time is not dispositive as a legal matter.[8]

V.   Defendants' Reliance Arguments Do Not Eliminate The Disputed Facts

Defendants' three arguments about Emergent's reliance on Defendants' misrepresentations misconstrue the case law and simply argue the facts.[9]

*First,* as to Adams only, Defendants reiterate their claim that *Retrofit Partners I, L.P. v. Lucas Industries, Inc.*, 201 F.3d 155 (2d Cir. 2000), controls this case.  Reply 11.  *Retrofit* held that reliance on defendant's prior oral statement that defendant *would* close the contemplated deal was unreasonable because the parties entered into an agreement providing, to the contrary, that it "would terminate upon any decision by [defendant] not to proceed with the program and no other obligations would exist."  201 F.3d at 162-63.  Defendants argue that here, like *Retrofit*, the LOI and Loan Agreement provided that the parties could walk away from the asset purchase deal, and thus that reliance must be unreasonable.  Reply 11.  This focus on the purported similarities in the contracts ignores the material differences between the two cases' *misrepresentations*.  In *Retrofit*, the defendant said it would close the deal and the contract stated— directly to the contrary—that defendant was not obligated to do so.  Here, Adams

---

[8] Thus, the cases cited in the Reply (at 14 n.5, 15 & n.6) to support the "changed mind" theory are distinguishable.  *See Couldock & Bohan, Inc. v. Societe Generale Secs. Corp.*, 93 F. Supp. 2d 220, 236 (D. Conn. 2000) (changed view after learning of plaintiff's illegal behavior); *Campaniello Imports, Ltd. v. Saporiti Italia S.P.A.*, 117 F.3d 655, 664 (2d Cir. 1997) (company's declaring bankruptcy explained its conduct).

[9] Defendants' reiteration of their argument that a generic disclaimer of reliance on oral representations in the agreements negates reliance (Reply 12), again fails on the law, which Defendants do not even attempt to address.  *See* Opp. 44-45 & n.5; *Martinez v. Zovich*, 867 A.2d 149, 156 (Conn. App. Ct. 2005).

represented he supported the deal and would cooperate with the deal and diligence; these statements are entirely consistent with the agreement permitting the companies to walk away from the asset purchase (which makes the statements all the more meaningful).  (The Reply (at 11) also incorrectly implies that *Retrofit* found reliance unreasonable on this basis for a different statement—namely that defendant's stating he was "serious" about the deal; tellingly, however, the "serious" statement, which (like the statements here) was not contrary to the contract, was dismissed on a different ground, 201 F.3d at 162.)

*Second*, Defendants ignore the facts by arguing that Emergent did not rely on the statements of cooperation with diligence—or that its reliance was unreasonable—because Emergent continued to fund the loan and pursue the asset purchase deal after diligence problems surfaced (Reply 16-17).  But Emergent loaned millions of dollars on the very day the Loan Agreement was signed, a fact that by itself bars summary judgment on this point.  Moreover, a jury could conclude that the continued funding and pursuit of the deal was reasonable even after certain diligence obstacles became apparent given that (1) Defendants concealed many of their key efforts to undermine diligence and (2) they repeatedly reassured Emergent that additional diligence was forthcoming.  *See* Opp. 32; Small Sur-Reply Decl. Ex. 68 at 143-44, 199 and Ex. 67 at 172-73.

*Third*, Defendants reiterate (Reply 2-3, 12 n.4, 17-18) their flawed argument that Emergent could not have relied on their statements of support and cooperation because these statements were never communicated to Emergent's Board.  This argument at most identifies a factual dispute as to what was

conveyed to the Board, which is for the jury to resolve.  *Compare* Reply 12 n.4 *with* El-Hibri Decl. ¶ 5; Ex. 15 at 68; Abdun-Nabi Decl. ¶ 16.  In any event, Defendants offer no relevant legal support for their view that the Board would need to be informed.  (The case cited does not address a comparable question of reliance.)  Settled agency law provides that a corporation relies on a misrepresentation when its employees so rely; Emergent management relied on Defendants' false statements in recommending the $10 million loan to Emergent's Board, and the Board, in turn, relied on that recommendation.  Opp. 43-44.

VI.     Defendants' Misrepresentations Harmed Emergent

Defendants offer no argument—nor can they—that Emergent was unharmed by Defendants' statements that they would cooperate with the deal; on the basis of those statements Emergent was induced to pursue the asset purchase transaction, at great expense, and to loan PSC $10 million, which has yet to be repaid.  Opp. 45-46.  Defendants argue that harm is lacking by focusing on the statements of cooperation with diligence alone, and pointing out that Emergent obtained diligence.  Reply 13.  But Defendants' promises of cooperation with diligence were a "substantial factor" in the harm Emergent suffered because these false promises led Emergent to pursue the asset purchase and provide the still un-repaid loan.  *Label Sys. Corp. v. Aghamohammadi*, 852 A.2d 703, 724 (Conn. 2004).  Regardless, this cannot warrant summary judgment given the other representations and resulting harm.

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

**Dated: September 10, 2010**
**New York, NY**

**Respectfully submitted,**

**By: /s/ Catherine Marlantes Rahm**

**Jonathan B. Orleans (CT05440)**
**Pullman & Comley, LLC**
**850 Main Street, P.O. Box 7006**
**Bridgeport, CT 06601-7006**
**tel.: (203) 330-2000**
**fax: (203) 330-2288**
**email: jborleans@pullcom.com**

**Howard M. Shapiro, admitted** *pro hac vice*
**Anne K. Small, admitted** *pro hac vice*
**Charu A. Chandrasekhar, admitted** *pro hac vice*
**Catherine Marlantes Rahm, admitted** *pro hac vice*
**Wilmer Cutler Pickering Hale and Dorr LLP**
**399 Park Avenue**
**New York, NY 10022**
**tel.: (212) 230-8800**
**fax: (212) 230-8888**
**email: catherine.rahm@wilmerhale.com**

*Attorneys for Plaintiff Emergent BioSolutions Inc.*